
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

FILED
JAN 1 2 2014
Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, vs. JASON CHARLES SHOUSE, Defendant/Movant. | Cause No. CR 12-71-GF-DLC<br>CV 14-89-GF-DLC<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

On November 24, 2014, Defendant Jason Charles Shouse filed a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Shouse is a federal prisoner proceeding pro se.

On December 1, 2014, the Court ordered Shouse to file an amended motion. Because the original motion did not set forth any claims for relief, Shouse was ordered either to file an amended motion or to state that he did not intend to proceed at this time. Order (Doc. 59) at 2. On December 29, 2014, Shouse filed an amended motion.

A motion under 28 U.S.C. § 2255 is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District

1

Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) (*"Nicolas"*) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But "it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## I. Background

In 1997, Shouse was convicted and sentenced in state court of one count of sexual intercourse without consent. The offense involved a three-year-old girl. *See* Presentence Report ¶ 37.

On July 17, 2012, Shouse's girlfriend moved out of his house. She took the SD card from one of Shouse's old cell phones to the Cascade County Sheriff's Office and told them it contained video footage of Shouse performing oral sex on a two-year-old girl. The girl was identified as someone Shouse was babysitting at the time he made the videos.

On September 20, 2012, Shouse was indicted on two counts of sexual exploitation of children, violations of 18 U.S.C. § 2251(a) (Counts 1 and 2); two counts of being a registered sex offender at the time he committed the conduct

alleged in Counts 1 and 2, respectively, violations of 18 U.S.C. § 2260A (Counts 3 and 4); and one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 5). Counts 1 and 3 were alleged to have occurred on May 24, 2008. Counts 2 and 4 were alleged to have occurred on June 8, 2009. Count 5 was alleged to have occurred on July 17, 2012. *See* Indictment (Doc. 1) at 2-4. Chief Federal Defender Anthony R. Gallagher was appointed to represent Shouse. Order (Doc. 10).

On January 29, 2013, Shouse pled guilty to Counts 1 and 3 of the Indictment. Minutes (Doc. 36); Plea Agreement (Doc. 32). Conviction on Count 1 carried a mandatory minimum penalty of 15 years in prison and a maximum of 30 years. But, as noted, Shouse had a prior conviction under Montana law. The Montana offense was equivalent to the federal offense of aggravated sexual abuse. Presentence Report ¶ 37; Mont. Code Ann. §§ 45-2-101(66), -5-503(1), (3)(a) (1995); 18 U.S.C. §§ 2241(c), 2246(2)(B)-(D). Consequently, Shouse faced an elevated mandatory minimum penalty of 25 years in prison and a maximum of 50 years. 18 U.S.C. § 2251(e). Conviction on Count 3 carried a mandatory sentence of ten years in prison, consecutive to the sentence on Count 1. 18 U.S.C. § 2260A.

A sentencing hearing was held on May 10, 2013. Minutes (Doc. 42). On Count 1, the base offense level was 32. Shouse received upward adjustments for offending against a child under the age of 12, for his personal participation in the

3

act he recorded, for sadistic conduct, and for having the child in his care at the time he committed the offense. The adjusted offense level was 44. He received a three-point downward adjustment for acceptance of responsibility. The total offense level was 41. Presentence Report ¶¶ 21-29. Because he was a repeat offender, his criminal history category was V. U.S.S.G. § 4B1.5; Presentence Report ¶¶ 30, 39. The advisory guideline range on Count 1 was 360 months to life in prison, but the statutory maximum was 50 years, or 600 months. With the ten-year consecutive term on Count 3, the effective sentencing range was 360-600 months on Count 1 plus 120 months on Count 3.

Shouse was sentenced to serve the lowest possible within-Guidelines sentence, 480 months on Count 1, followed by ten years on Count 3, for a total sentence of 50 years in prison, to be followed by a life term of supervised release. The federal sentence was imposed to run consecutive to the sentence imposed on revocation of Shouse's probation on the 1997 state conviction. Judgment (Doc. 44) at 2-3.

Shouse appealed the advisory guideline calculation underlying the sentence and the reasonableness of the sentence. On June 24, 2014, the Court of Appeals affirmed the sentence. *United States v. Shouse*, No. 13-30134 (9th Cir. June 24, 2014) (Doc. 55).

Shouse timely filed his § 2255 motion. 28 U.S.C. § 2255(f)(1); *Gonzalez v.*

*Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012).

## II. Claims and Analysis

Shouse contends that counsel's assistance was ineffective in several respects. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Shouse must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Case File

Shouse contends he has been "unable to litigate his case" because counsel has not produced his case file to him. Am. Mot. (Doc. 60) at 4 ¶ 12A. But Shouse has filed a § 2255 motion challenging the validity of the criminal judgment. He must already be aware of facts sufficient to support an inference that he is entitled to relief, based on his own knowledge of his case and what did and did not happen, or he could not have filed motion in good faith. There is no reason to believe that anything in the Court's file would benefit Shouse if only he had it in his possession. As for the discovery that is produced to the defense by the United States, it is not filed with the Court. Some of it is contraband, and it would at

minimum have to be redacted to protect the privacy of victims and witnesses. Because the nature of Shouse's case and allegations do not suggest the presence of unexplored angles of defense, there is no good reason to order all of it to be produced to him.[1] In sum, Shouse provides no reason to believe that counsel acted unreasonably by failing to deliver the case file to him in prison. More fundamentally, the fact that Shouse does not have counsel's file in his possession does not support an inference that there is a reasonable probability Shouse would not have been convicted or would have received a lesser sentence.

Neither prong of the *Strickland* test is met. This claim is denied.

## B. Fourth Amendment Claims

Shouse claims counsel "never addressed Fourth Amendment issues." Shouse contends counsel should have argued that there was "no search warrant" and no "consent to enter the premises." Am. Mot. at 4-5 ¶ 12A.

Count 1 was based on images Shouse captured on an old cell phone. Shouse's girlfriend, one Ms. Kufchak, delivered the phone's SD card to the

---

[1] As one appellate judge said of transcripts:
> The usual grounds for successful collateral attacks upon convictions arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript. He may well have a need of a transcript (to support his claim) but rarely, if ever, . . . to become aware of the events or occurrences which constitute a ground for collateral attack.

*United States v. MacCollom*, 426 U.S. 317, 327-28 (1976) (plurality op.) (quoting *United States v. Shoaf*, 341 F.2d 832, 835 (4th Cir. 1964) (Haynsworth, J.)).

Cascade County Sheriff's Office on her own initiative. Based on what she told detectives, Shouse's probation officer and Cascade County deputies went to Shouse's home and searched it. They seized several devices capable of storing electronic images. They took the devices back to the evidence room at the Cascade County Sheriff's Office and applied for warrants to search them. The documents underlying the search of Shouse's devices are in the Court's record because, contrary to Shouse's allegation, counsel filed a motion to suppress. He attached the application for the search warrant to his motion. *See* Appendix to Mot. to Suppress (Doc. 23-1) at 6-7 ¶ 8.

Counsel argued the warrant was defective because it was based on stale information and because it "authorized a general search of the evidence room" rather than particularly describing the place to be searched. Br. in Supp. (Doc. 24) at 4-5, 7-10. Before the United States responded, the parties reached a plea agreement. *See* United States' Mot. for Extension (Doc. 26) at 2; Def. Mot. for Extension (Doc. 28); Orders (Docs. 27, 30); Def. Mot. to Change Plea (Doc. 31); Plea Agreement (Doc. 32).

There is no reason to suspect counsel's performance was deficient or that Shouse was unfairly prejudiced. Any motion to suppress was highly unlikely to succeed. It appears there was not a warrant to enter Shouse's home to search it for electronic devices that might contain child pornography, and it does not appear

that Shouse consented to the search. But Shouse was on probation at the time his girlfriend made the report to the police. As one of his conditions of release, he was subject to searches. The search was conducted at his residence with the participation of a probation officer. Neither a warrant nor Shouse's consent were required to authorize officers' entry into his home. *Samson v. California*, 547 U.S. 843, 846 (2006); Affidavit and Application at 7 (Doc. 23-1 at 7); Presentence Report ¶¶ 10-15, 37.

In addition, there were exigent circumstances. Shouse knew Kufchak was aware of the images and was considering going to the police; he sent her text messages to discourage her from doing so. Affidavit and Application at 7 (Doc. 23-1 at 7). Her statement to police provided ample probable cause to believe multiple electronic storage devices in Shouse's possession would contain evidence of crimes or contraband. Although counsel argued the information underlying the warrant application was stale, Kufchak reported having seen images of child pornography on various devices of various ages at different times over the past few months. Shouse had previously destroyed images after Kufchak told him she saw them. *See* Kufchak Statement at 2-3 (Doc. 23-1 at 17-18). Under these circumstances, there was a significant risk that Shouse would destroy the devices or their contents before a warrant could be obtained. Again, neither a warrant nor Shouse's consent was required to authorize officers to enter his home and seize the

devices. *E.g., Kentucky v. King*, __ U.S. __, 131 S. Ct. 1849, 1856-57 (2011); *Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

Viewed in light of the record of the case, Shouse's allegations as to Fourth Amendment issues do not support an inference either that counsel's performance was deficient or that Shouse was prejudiced. As neither prong of the *Strickland* test is met, this claim is denied.

**C. Failure to Call Witnesses**

Shouse claims that counsel "never called prominent witnesses." Am. Mot. at 4 ¶ 12A. He does not name these witnesses or identify any relevant testimony a witness could have given. Shouse decided to plead guilty before the United States responded to counsel's motions. Witnesses are not called at a change of plea hearing.

At sentencing, in Shouse's presence, counsel stated, "Mr. Shouse specifically asked [his mother] and the rest of the family not to be here." Sentencing Tr. (Doc. 53) at 16:10-11.

Neither the record of the case nor Shouse's allegations provide any reason to question whether counsel's performance was deficient or whether Shouse was prejudiced as a result. Neither prong of the *Strickland* test is met. This claim is denied.

**D. Rule 52(b)**

9

Shouse claims counsel "never objected [under] Rule 52(b) of the Federal Rules of Criminal Procedure." Am. Mot. at 4 ¶12A. Rule 52(b) does not provide a legal basis for an objection; it describes the standard of review a court applies to unpreserved claims of error. To the extent Shouse means to allege there was plain error in his case, he fails to identify any. Neither prong of the *Strickland* test is met. This claim is denied.

**E. Double Jeopardy**

There were no double jeopardy issues in the case. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

Counts 1 and 2 alleged the same offenses but different dates and, therefore, different acts or transactions. Counts 3 and 4 alleged the same offenses but different dates, i.e., different acts or transactions. Counts 1 and 2 each required the prosecution to prove a fact that Counts 3, 4, and 5 did not – production of child pornography. Counts 3 and 4 required the prosecution to prove a fact that Counts 1, 2, and 5 did not – that Shouse was required to register as a sex offender. Count 5 required the prosecution to prove a fact that Counts 1, 2, 3, and 4 did not – possession of child pornography. The enhancement under Count 1 and 18 U.S.C. §

2251(e) required the government to prove the prior offense was one of the listed offenses, and the penalty enhancement under Count 3 and 18 U.S.C. § 2260A required the government to prove the defendant was, at the time he committed the conduct constituting Count 1, required to register as a sex offender.

One can perceive that the enhanced penalty provided under 18 U.S.C. § 2251(e) for defendants with prior convictions is further enhanced by conviction under 18 U.S.C. § 2260A. Persons subject to an enhanced penalty under § 2251(e) may well be required to register as sex offenders based on the same underlying conviction, *see, e.g.*, 42 U.S.C. § 16911(5) (defining a "sex offense" for purposes of federal Sexual Offender Registration and Notification Act).

But even if the registration requirement and the nature of the prior conviction are analogous to the facts of receipt and possession – i.e. you cannot have the former without also having the latter, *see United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008) – Shouse would still have no double jeopardy claim. When multiple sentences are imposed together, protection against double jeopardy "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). In other words, Congress may choose to impose multiple punishments for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 365-68 (1983); *Albernaz v. United States*, 450 U.S. 333, 340 (1981). In the sentencing

context, therefore, the *Blockburger* test is only a guide to legislative intent. "If two different criminal statutory provisions indeed punish the same offense or one is a lesser included offense of the other, then conviction under both is presumed to violate congressional intent." *Davenport*, 519 F.3d at 943. Thus, assuming the "same-elements" test of *Blockburger* is met, the question is whether other evidence clearly expresses the legislature's intent to impose multiple punishments. *Albernaz*, 450 U.S. at 336.

The language of § 2260A does exactly that. The statute was enacted in 2006. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, tit. VII, § 702(a), 120 Stat. 587, 648 (July 27, 2006). Congress said:

> Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section 1201, 1466A, 1470, 1591, 2241, 2242, 2243, 2244, 2245, 2251, 2251A, 2260, 2421, 2422, 2423, or 2425, shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision. The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision.

18 U.S.C. § 2260A. "Congress is presumed to have known of its former legislation and to have passed new laws in view of the provisions of the legislation already enacted." *United States v. Vargas-Amaya*, 408 F.3d 1227, 1230 (9th Cir. 2005) (quoting *United States v. Hanousek*, 176 F.3d 1116, 1121 (9th Cir 1999)). The provision in § 2251 imposing enhanced sentences on persons with prior

12

convictions for similar offenses was enacted in 1978. *See* Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7 (Feb. 6, 1978), *codified at* 18 U.S.C. § 2251(c). The same provision was regularly updated and, in fact, was amended in the same bill that enacted § 2260A. *See* Pub. L. No. 109-248, tit. II, § 206(b)(1). Therefore, the language of § 2260A, enacted in July 2006, clearly expresses Congress's intent to impose further punishment on persons already subject to the prior-conviction enhancement under § 2251(e).

There was no double jeopardy issue in Shouse's case. "[T]rial counsel cannot have been ineffective for failing to raise a meritless objection." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Neither prong of the *Strickland* test is met. This claim is denied.

**F. Miranda Rights**

Shouse asserts that counsel "never addressed petitioner's Miranda Rights" and "[t]hey were never read to him." Am. Mot. at 4 ¶ 12A. "[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (discussing *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966)). An "interrogation" consists of "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

The record of the case does not suggest Shouse was ever entitled to a *Miranda* warning. But, even assuming Shouse was interrogated by police at some point while he was in custody and was not advised of his *Miranda* rights, he suffered no prejudice. No statement made by Shouse was pertinent to his conviction, *see* Offer of Proof (Doc. 33) at 4-5, or to the advisory guideline calculation, Presentence Report ¶¶ 10-15, 22-25.

Although defendants generally retain the Fifth Amendment right to be silent at sentencing, *see Mitchell v. United States*, 526 U.S. 314, 317 (1999), Shouse explicitly waived his Fifth Amendment privilege when he agreed to obtain a sex offender evaluation. Plea Agreement (Doc. 32) at 11 ¶ 13; Change of Plea Tr. (Doc. 52) at 15:8-16:16. There is no reason to suppose counsel's advice that Shouse waive the privilege was unreasonable. Nor is there a realistic possibility that Shouse would not have pled guilty and would have gone to trial on all five charges to preserve his right to silence. *See Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). He was expressly informed at the change of plea hearing that he was waiving his right to remain silent by pleading guilty. Change of Plea Tr. at 18:15-19, 19:6-15, 20:4-7, 21:24-22:12.

Neither prong of the *Strickland* test is met. This claim is denied.

### G. Exculpatory Evidence

Shouse does not identify any exculpatory evidence capable of undermining

14

the guilty plea or the sentence. Neither prong of the *Strickland* test is met. This claim is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Shouse's claim that officers had no warrant and no consent to authorize their entry into his home to seize cell phones and computers ignores both his status as a probationer and his girlfriend's report to police supporting findings of both probable cause and exigent circumstances. Shouse's minimum and maximum sentence on Count 1 was enhanced by his prior conviction, and he was also subject to a ten-year mandatory consecutive sentence on Count 3 because that same prior conviction obligated him to register as a sex offender; nonetheless, there was no double jeopardy violation, because the text of 18 U.S.C. § 2260A clearly expresses

Congress' intent to impose multiple punishments. There is no indication in the record that Shouse was ever subjected to custodial interrogation or, if so, that any statement he made was used against him, so there is no reason to suppose he was ever entitled to a *Miranda* warning. Statements he made to a psychosexual evaluator were material to his sentence, but Shouse agreed to obtain a sex-offender evaluation as part of the plea agreement, and he expressly waived his Fifth Amendment right to remain silent. Shouse identifies no exculpatory evidence the United States failed to produce to the defense, no witnesses who might have had relevant testimony (except for his family members, whom he did not want to attend sentencing), and no "plain error" under Fed. R. Crim. P. 52(b).

None of Shouse's claims meets either prong of the *Strickland* test. There are no open questions and there is no reason to encourage further proceedings. A certificate of appealability is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Shouse's motion and amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 57, 60) are DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Shouse files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and

in CV 14-89-GF-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Shouse.

DATED this 12th day of January, 2015.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court